1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| TREAUNA L. TURNER, | Case No. 1:22-cv-00480-ADA-EPG (PC) |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT THIS ACTION BE DISMISSED, WITH PREJUDICE |
| v. | |
| CENTRAL CALIFORNIA WOMEN'S FACILITY, et al., | (ECF No. 17) |
| Defendants. | OBJECTIONS, IF ANY, DUE WITHIN TWENTY-ONE DAYS |

Treauna Turner ("Plaintiff") is a state prisoner proceeding *pro se* and *in forma pauperis* in this civil rights action.

Plaintiff filed the complaint commencing this action on April 22, 2022.  (ECF No. 1).  On June 3, 2022, the Court screened Plaintiff's complaint and found that it failed to state any cognizable claims.  (ECF No. 9).  The Court gave Plaintiff thirty days to either: "a. File a First Amended Complaint **that is no longer than twenty (20) pages, including exhibits**; or b. Notify the Court in writing that she wants to stand on her complaint."  (Id. at 19).  After receiving extensions of time to respond (ECF Nos. 11 & 14), Plaintiff filed her First Amended Complaint on January 13, 2023 (ECF No. 17).  Plaintiff largely complains about retaliation and a lack of disability accommodations, but she includes other allegations as well.

The Court has reviewed Plaintiff's First Amended Complaint, and for the reasons

1

described in this order, will recommend that this action be dismissed, with prejudice.

Plaintiff has twenty-one days from the date of service of these findings and recommendations to file her objections.

## I.      SCREENING REQUIREMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A(b)(1), (2).  As Plaintiff is proceeding *in forma pauperis* (ECF No. 7), the Court may also screen the complaint under 28 U.S.C. § 1915.  "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that the action or appeal fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint is required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  A plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Id. (quoting Twombly, 550 U.S. at 570).  The mere possibility of misconduct falls short of meeting this plausibility standard.  Id. at 679.  While a plaintiff's allegations are taken as true, courts "are not required to indulge unwarranted inferences."  Doe I v. Wal-Mart Stores, Inc., 572 F.3d 677, 681 (9th Cir. 2009) (citation and internal quotation marks omitted).  Additionally, a plaintiff's legal conclusions are not accepted as true.  Iqbal, 556 U.S. at 678.

Pleadings of *pro se* plaintiffs "must be held to less stringent standards than formal pleadings drafted by lawyers."  Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010) (holding that *pro se* complaints should continue to be liberally construed after Iqbal).

## II.    PRIOR SCREENING ORDER

The Court screened Plaintiff's original complaint on June 3, 2022.  (ECF No. 9).  The Court found that Plaintiff's complaint violated Rule 8(a), and explained the deficiencies to Plaintiff:

> Plaintiff's complaint, which is twenty pages and spans a period of approximately eleven years, is verbose, confusing, and conclusory.  It does not clearly set forth facts supporting Plaintiff's claims.
>
> While Plaintiff states she is only bringing two claims, it is not at all clear that this is true.  For example, Plaintiff complains about conditions of confinement, lack of medical care, retaliation, and lack of disability accommodations.  Plaintiff also complains about occurrences at California Institution for Women, even though she does not bring suit against any defendants employed there.  She also complains about the conduct of individuals who are not named as defendants in this action, such as Mr. German.  It is thus not clear if Plaintiff includes numerous irrelevant allegations, which [] is improper, or if Plaintiff is improperly attempting to bring numerous separate claims.  See, e.g., Pinzon v. Jensen, 2009 WL 231164, at *2 (E.D. Cal., Jan. 30, 2009) ("Although Plaintiff attempts to allege many causes of action and provides a description of his alleged experiences, his narrative-style complaint is insufficient to state legally cognizable causes of action. It is Plaintiff's burden, not that of the court, to separately identify claims and state facts in support of each claim."); Saunders v. Saunders, 2009 WL 382922, at *2 (E.D. Cal., Feb. 13, 2009) ("A complaint having the factual elements of a cause of action scattered throughout the complaint and not organized into a 'short and plain statement of the claim' may be dismissed for failure to satisfy Rule 8(a).").
>
> Moreover, many of Plaintiff's allegations are conclusory.  For example, she repeatedly alleges that she suffered adverse actions in retaliation for exercising her First Amendment rights, but fails to identify supporting facts, such as anything any defendant said or did that would suggest the adverse actions occurred because she engaged in protected conduct.
>
> Additionally, Plaintiff repeatedly alleges she was denied benefits, such as job opportunities, because she is disabled, but Plaintiff fails to identify any supporting facts, such as anything any defendant said or did that would suggest Plaintiff was denied a benefit because of her disability.
>
> Based on the foregoing, the Court finds that Plaintiff's complaint violates Rule 8(a).  If Plaintiff chooses to amend her complaint, she must demonstrate that each named defendant personally participated in the deprivation of [her] rights with allegations that are not conclusory.  She should also list each claim that she is bringing, along with the facts supporting each claim.

(ECF No. 9, pgs. 9-10).

The Court also provided Plaintiff with relevant legal standards, including for the Americans with Disabilities Act, the Rehabilitation Act, retaliation in violation of the First Amendment, deliberate indifference to serious medical needs in violation of the Eighth Amendment, and conditions of confinement in violation of the Eighth Amendment.  (Id. at 10-18).  The Court gave Plaintiff leave to file an amended complaint.

### III.   SUMMARY OF PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff's First Amended Complaint alleges the following:

A.  Claim 1

For thirteen years Plaintiff has been forced to live in segregated housing by the demand of the prior CEO of Medical for Central California Women's Facility ("CCWF"), R. Mitchell, and the Warden for Americans with Disability ("ADA") inmates at CCWF and throughout the State of California.  Plaintiff was denied the right of equal housing in general population and a "job with a Pay Solt" solely because she has disabilities that have confined her to a wheelchair permanently due to two gunshot wounds to her backside.  (ECF No. 17, p. 8).

Plaintiff's sixteen-to-life sentence began on April 20, 2011.  Her receiving prison facility was California Institution for Women ("CIW").  Plaintiff requested this institution because she was from Los Angeles County and CIW is in Corona, California.

Because CIW did not have any of the ADA accommodations that were deemed medically necessary for Plaintiff to have for her day-to-day self-care, Plaintiff was then kicked out of the dorm rooms by custody and inmates during the receiving process.  This occurred while Plaintiff was waiting for her Committee hearing so that she could be endorsed in order to receive housing and programming.  Custody then placed Plaintiff in segregated housing among inmates that were in prison pursuant to disciplinary charges.  Plaintiff was put in a very small, non-ADA compliant prison cell with a cellmate under falsified ADA accommodations for ninety days, pending transfer to CCWF.

After Plaintiff was transferred, Plaintiff was forced by the prior CEO of Medical,

defendant Mitchell, into another ninety-day receiving process that prolongs endorsement and stable, permanent ADA housing for newly arrived inmates.

Plaintiff was still in segregated housing status through medical within CCWF when she was in the infirmary for ADA accommodations.  However, Plaintiff was not enrolled in any mental health programs.  Custody and the prior Warden, D.K. Johnson, did not allow Plaintiff to attend the groups that were offered to closed custody status inmates because of her disabilities and segregated housing status.[1]

### B.  Claim 2

"Within" her thirteen years of incarceration, the Physician and prior CEO of medical forced Plaintiff to live in segregated housing due to her disability or health conditions.  This led to injury.

After earning the right to be removed off closed custody through several administrative appeals and the advocacy of the Prison Law Office, Physician and CEO of Medical defendant Mitchell partially granted Plaintiff's appeal.  Plaintiff was granted one self-help group and the right to enroll into the Voluntary Education Program.

In this program, it took over five years for Plaintiff to earn her high school diploma. There was an agreement with defendant Dill, the ADA Warden, that once Plaintiff graduated from high school she would then be qualified for a job with a "Pay Solt" with the Prison Industry Authorities.

Plaintiff graduated, earning her high school diploma on October 5, 2017.  After graduating Plaintiff was forced to attend a vocational training program after defendant Dill denied Plaintiff the job at the Prison Industry Authority.  Plaintiff filed an 1824 ADA accommodations appeal for a job with a "Pay Solt," and defendants Dill, Pallares (the Warden), and Popper (the inmate assignment Lieutenant) told Plaintiff that she first must graduate from Computer and Related Technologies.

On October 11, 2021, Plaintiff successfully graduated from Computer and Related

---

[1] Johnson is not named as a defendant in this action.

Technologies.  Defendants Dill and Popper denied Plaintiff a job with a "Pay Solt" again and forced Plaintiff into another vocational program that was supposed to be voluntary.

On November 30, 2021, the California Department of Corrections and Rehabilitation computer system will show that Plaintiff was being accommodated when in reality Plaintiff was being discriminated against.  None of the vocational training work sites had ADA accommodations nor ADA restrooms from 7:30 a.m.-2:30 p.m.  Plaintiff was forced to hold her urine.  Plaintiff filed another appeal to be removed from the Core-Construction Vocational Training Program.

Pending the appeal, Plaintiff refused to attend the work site because it was not ADA accommodating or safe for an individual in a wheelchair.  During interviews, Plaintiff would be threatened by the interviewing officials and written-up for various causes.  Plaintiff could not continue to hold her urine for hours due to no ADA accommodations in the vocational sites.

Defendant Mitchell took Plaintiff off total disability to limited duties, granting Plaintiff medical access to attend groups, education, and jobs.  However, he still denied Plaintiff a discharge out of segregated housing to general population due to her disability in the year 2013.

However, in segregated housing Plaintiff was also denied daily showers despite her being an incontinent inmate that programs full time under D.P.W. limited duties.

Through administrative appeals Plaintiff requested to be able to take daily showers before and after programming.  After several denied administrative appeals, defendant Mitchell retaliated in 2015 by transferring Plaintiff to a non-ADA facility under a medical hold.  First Valley State Prison, and then CIW.  CIW was not at all accessible nor equipped for D.P.W. disabled inmates.

In segregated housing at CIW, the mental health units lock down 24-hours a day with only one hour out for phone time.  Plaintiff began exercising her First Amendment rights for better prison living conditions and programing through administrative appeals and hunger striking, while suffering from third degree bedsores from lack of ADA accommodations.  The lack of accommodations resulted in a staph infection and then an MRSA infection, which is the highest level of a staph infection.  This occurred because Plaintiff was not being provided with

proper health care.

Plaintiff became very malnourished.

Plaintiff received a write-up from a certified nursing assistant, by the demand of custody, for speaking under the First Amendment about Sunday morning church services, before being transferred back to CCWF.  The result of the write-up was a denial of parole at her June 2, 2021 Parole Board hearing.

Plaintiff was discharged by her doctor and the Warden at CIW, and she was transferred back to the custody of CCWF.  Her bedsores worsened due to being forced to sit on the bedsores for the eight hour drive back into the custody of CCWF.  When Plaintiff was released out of isolation, her bed sores were a bit better.

Without delay Plaintiff went and enrolled back into education and earned her high school diploma on October 5, 2017.

After graduation, defendants Dill, Pallares, and Popper denied Plaintiff a job with a "Pay Solt" because she was disabled and under Segregated Housing Status, until Plaintiff filed a discrimination civil suit for the approval to sue CDCR for discriminating against her and her disabilities by forcing her into thirteen years of segregated housing and refusing to accommodate her with a job with a "Pay Solt" to help her pay her restitution.

On March 8, 2022, Plaintiff received a Notice of Right to Sue from the United States Equal Employment and Housing Commission.  On April 22, 2022, her federal civil suit was scanned and e-mailed.

Due to her civil filings Plaintiff was immediately removed from segregated housing but is still fighting for ADA housing that is deemed medically necessary for her accommodations.  However, she now has a clerk job that is paying out toward her restitution, after thirteen years of advocacy.

C.  Claim 3

As of May 5, 2022, Plaintiff is no longer housed in the infirmary/mental health segregation unit.  Instead, she is housed in general population.

However, as of January 5, 2023, Plaintiff is still being violated by defendant Thomas,

the new ADA sergeant, defendant Dill, and defendant Pallares. These defendants are only approving Plaintiff's ADA accommodations every six months instead of permanently, which leaves Plaintiff open for segregated housing if a transgender male from the men's prisoner is transferred to CCWF and is in need of ADA accommodations. Then it is Plaintiff who will be transferred back into a segregated unit from general population despite her prior injuries. She is forced to live under such false pretenses, including retaliation, due to speaking out in writing about the poor prison conditions.

Plaintiff is in total fear for her life and safety. Plaintiff has been violated sexually and written up for exercising her First Amendment rights about the violations. Plaintiff has been injured, resulting in a broken rib cage, from repeated falls due to being forced to live under falsified ADA pretense. Plaintiff has been forced into vocational training programs that were not accessible to disabled inmates like Plaintiff. One lacked ADA bathrooms, which resulted in Plaintiff having repeated UTI's that were deadly and now incurable. Also, Plaintiff is now infected with E. coli. The reason is defendant Mitchell took away her "self-caths" that she had used for the eleven years she has been wheelchair bound. Cheaper ones have kept Plaintiff infected with UTI's and E. coli. Plaintiff is now on a lifetime medication that does not kill the infection. It is the tool the prison uses just to claim Plaintiff is being treated for the ongoing deadly UTI's and E. Coli infection even though it does not do anything. Plaintiff still has a UTI and E. Coli.

## IV.   ANALYSIS OF PLAINTIFF'S FIRST AMENDED COMPLAINT

### A. Section 1983

The Civil Rights Act under which this action was filed provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Graham v. Connor,

490 U.S. 386, 393-94 (1989) (quoting <u>Baker v. McCollan</u>, 443 U.S. 137, 144 n.3 (1979)); <u>see also</u> <u>Chapman v. Houston Welfare Rights Org.</u>, 441 U.S. 600, 618 (1979); <u>Hall v. City of Los Angeles</u>, 697 F.3d 1059, 1068 (9th Cir. 2012); <u>Crowley v. Nevada</u>, 678 F.3d 730, 734 (9th Cir. 2012); <u>Anderson v. Warner</u>, 451 F.3d 1063, 1067 (9th Cir. 2006).

To state a claim under section 1983, a plaintiff must allege that (1) the defendant acted under color of state law, and (2) the defendant deprived him of rights secured by the Constitution or federal law.  <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006); <u>see also</u> <u>Marsh v. County of San Diego</u>, 680 F.3d 1148, 1158 (9th Cir. 2012) (discussing "under color of state law").  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'"  <u>Preschooler II v. Clark County Sch. Bd. of Trs.</u>, 479 F.3d 1175, 1183 (9th Cir. 2007) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978)).  "The requisite causal connection may be established when an official sets in motion a 'series of acts by others which the actor knows or reasonably should know would cause others to inflict' constitutional harms."  <u>Preschooler II</u>, 479 F.3d at 1183 (quoting <u>Johnson</u>, 588 F.2d at 743).  This standard of causation "closely resembles the standard 'foreseeability' formulation of proximate cause."  <u>Arnold v. Int'l Bus. Mach. Corp.</u>, 637 F.2d 1350, 1355 (9th Cir. 1981); <u>see also</u> <u>Harper v. City of Los Angeles</u>, 533 F.3d 1010, 1026 (9th Cir. 2008).

A plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights.  <u>Iqbal</u>, 556 U.S. at 676-77.  In other words, there must be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff.  <u>See</u> <u>Monell v. Dep't of Soc. Servs. of City of N.Y.</u>, 436 U.S. 658, 691, 695 (1978).

B.  <u>Federal Rule of Civil Procedure 8(a)</u>

As set forth above, Rule 8(a) of the Federal Rules of Civil Procedure requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  Although a complaint is not required to include

detailed factual allegations, it must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). It must also contain "sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011). Moreover, Plaintiff must demonstrate that each named defendant personally participated in the deprivation of his rights. Iqbal, 556 U.S. at 676-77.

A court may dismiss a complaint for failure to comply with Rule 8(a) if it is "verbose, confusing and conclusory." Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 674 (9th Cir. 1981); Brosnahan v. Caliber Home Loans, Inc., 765 F. App'x 173, 174 (9th Cir. 2019). Additionally, a court may dismiss a complaint for failure to comply with Rule 8(a) if it is "argumentative, prolix, replete with redundancy, and largely irrelevant." McHenry v. Renne, 84 F.3d 1172, 1177 (9th Cir. 1996).

Plaintiff's First Amended Complaint suffers from many of the same defects as her prior complaint. In the prior screening order, the Court found "that Plaintiff's complaint, which is twenty pages and spans a period of approximately eleven years, is verbose, confusing, and conclusory. It does not clearly set forth facts supporting Plaintiff's claims." (ECF No. 9, p. 9). Plaintiff's First Amended Complaint suffers from these same defects. Her complaint alleges facts spanning a period of over twelve years. Additionally, it is verbose, confusing, and conclusory, and it does not set forth facts supporting her claims.

Once again, many of Plaintiff's allegations are conclusory. For example, Plaintiff once again repeatedly alleges that she was retaliated against for exercising her First Amendment rights, but she fails to identify supporting facts, such as anything any defendant said or did, that would suggest the adverse actions occurred because she engaged in protected conduct. She also repeatedly alleges that she was denied benefits because she is disabled, but she fails to identify any supporting facts, such as anything any defendant said or did, that would suggest she was denied a benefit because of her disability.

Moreover, while Plaintiff states that she is only bringing three claims, she alleges facts regarding multiple unrelated issues. She complains about not being provided with a job with a

"Pay Solt," conditions of confinement, lack of medical care, lack of disability accommodations, retaliation, and a threat to her safety.  Moreover, she complains about numerous distinct incidents of misconduct that occurred over a period of many years at different institutions of confinement.  She also repeatedly complains about the conduct of "custody," without identifying any responsible individual, and on at least one occasion complains about the conduct of a non-defendant, Warden D.K. Johnson.  Such allegations in a narrative format alleging multiple causes of action are insufficient to state legally cognizable claims.  See, e.g., Pinzon v. Jensen, 2009 WL 231164, at *2 (E.D. Cal., Jan. 30, 2009) ("Although Plaintiff attempts to allege many causes of action and provides a description of his alleged experiences, his narrative-style complaint is insufficient to state legally cognizable causes of action.  It is Plaintiff's burden, not that of the court, to separately identify claims and state facts in support of each claim."); Saunders v. Saunders, 2009 WL 382922, at *2 (E.D. Cal., Feb. 13, 2009) ("A complaint having the factual elements of a cause of action scattered throughout the complaint and not organized into a 'short and plain statement of the claim' may be dismissed for failure to satisfy Rule 8(a)."); ECF No. 9, pgs. 9-10.

Accordingly, the Court once again finds that Plaintiff's complaint is subject to dismissal under Rule 8(a).

C.   Dismissal With Prejudice is Appropriate

"A complaint which fails to comply with rules 8(a) and 8(e) may be dismissed with prejudice pursuant to rule 41(b)."  Nevijel v. N. Coast Life Ins. Co., 651 F.2d 671, 673 (9th Cir. 1981) (collecting cases) (footnote omitted).  "Dismissal with prejudice of a complaint under Rule 41(b) is a harsh remedy…."  McHenry v. Renne, 84 F.3d 1172, 1178 (9th Cir. 1996).  "The district judge should first consider less drastic alternatives, but need not exhaust them all before finally dismissing a case."  Id. (citation and internal quotation marks omitted).  "These less drastic alternatives include allowing further amended complaints, allowing additional time, or insisting that [Plaintiff] associate experienced counsel."  Nevijel, 651 F.2d 671, 674 (9th Cir. 1981).

"'The public's interest in expeditious resolution of litigation always favors dismissal.'"

Id. (quoting Yourish v. California Amplifier, 191 F.3d 983, 990 (9th Cir. 1999)).  Accordingly, this factor weighs in favor of dismissal.

As to the Court's need to manage its docket, "[t]he trial judge is in the best position to determine whether the delay in a particular case interferes with docket management and the public interest….  It is incumbent upon the Court to manage its docket without being subject to routine noncompliance of litigants...."  Id.  Plaintiff's failure to cure the deficiencies identified by the Court in the first screening order, despite being given approximately six months to do so, is delaying this case and interfering with docket management.  Therefore, the second factor weighs in favor of dismissal.

Turning to the risk of prejudice, "pendency of a lawsuit is not sufficiently prejudicial in and of itself to warrant dismissal."  Id. (citing Yourish, 191 F.3d at 991).  However, "delay inherently increases the risk that witnesses' memories will fade and evidence will become stale," id. at 643, and it is Plaintiff's failure to comply with Rule 8(a), despite the Court specifically identifying the deficiencies, that has delayed, and will continue to delay, resolution of this case.  Therefore, the third factor weighs in favor of dismissal.

As for the availability of lesser sanctions, the Court previously warned Plaintiff that failure to comply with Rule 8(a) could result in dismissal of her complaint,[2] granted Plaintiff leave to amend to cure the deficiencies identified by the Court, and gave Plaintiff approximately six months to do so.  However, Plaintiff's First Amended Complaint suffers from many of the same deficiencies the Court identified in the first screening order.  Thus, it appears that further leave to amend would be futile.  Finally given Plaintiff's incarceration and in forma pauperis status, it appears that monetary sanctions are of little use.  Accordingly, the Court has considered less drastic sanctions, but none are viable.

Finally, because public policy favors disposition on the merits, this factor weighs

---

[2] As discussed above, in the first screening order the Court explained the deficiencies in Plaintiff's complaint to Plaintiff.  The Court also informed Plaintiff that she "may choose to stand on this complaint, in which case the Court will issue findings and recommendations to a district judge recommending dismissal of the action consistent with this order."  (ECF No. 9, p. 19).  The Court also warned Plaintiff that "[f]ailure to comply with this order may result in the dismissal of this action."  (Id.).

1    against dismissal.  Id.

2           After weighing the factors, the Court finds that dismissal with prejudice is appropriate.

3    **V.        CONCLUSION AND RECOMMENDATIONS**

4           Accordingly, based on the foregoing, the Court HEREBY RECOMMENDS that:

5           1.   This action be dismissed, with prejudice; and

6           2.   The Clerk of Court be directed to close this case.

7           These findings and recommendations will be submitted to the United States district

8    judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(1).  Within

9    twenty-one (21) days after being served with these findings and recommendations, Plaintiff

10   may file written objections with the Court.  The document should be captioned "Objections to

11   Magistrate Judge's Findings and Recommendations."  Plaintiff is advised that failure to file

12   objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v.

13   Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394

14   (9th Cir. 1991)).

15

16   IT IS SO ORDERED.

17       Dated:   __**May 23, 2023**__              /s/ _Erica P. Grosjean_

18                                                  UNITED STATES MAGISTRATE JUDGE

13